## In re ZZZZ BEST SECURITIES LITIGATION.

### No. CV–87–3574–RSWL(Bx).

United States District Court, C.D. California.

Aug. 12, 1994.

Marc M. Seltzer, Corinblit & Seltzer, A Professional Corp., Los Angeles, CA, for plaintiffs.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, David J. Bershad, Milberg Weiss Bershad, Hynes & Lerach, New York City, for plaintiffs A. Jacques Lou, Seymour Lazar, and David Elefant.

Edward Labaton, Joseph Sternberg, Goodkind Labaton Rudoff & Sucharow, Stuart D. Wechsler, Robert A. Skirnick, Wechsler Skirnick Harwood Halebian & Feffer, Robert S. Schachter, Zwerling, Schachter & Zwerling, New York City, for plaintiff E. Allan Lustig.

Marian P. Rosner, Patricia I. Avery, Wolf Popper Ross Wolf & Jones, New York City, for plaintiff Mordecai Weiss.

Stephen Lowey, Richard Bemporad, Robert W. Rodriguez, Lowey Dannenberg, Bemporad & Selinger, P.C., Howard Sirota, Sirota & Sirota, New York City, for plaintiff David Elefant.

George C. Zachary, Rosenfeld, Meyer & Susman, Beverly Hills, CA, for plaintiffs E. Allan Lustig, Susan D. Fader, Bruce Doniger and George Strum.

Arthur N. Abbey, Joshua I. Rubin, Abbey & Ellis, New York City, for plaintiff Bruce Doniger.

David Berger, Sherrie R. Savett, Karen S. Orman, Stuart J. Guber, Berger & Montague, P.C., Philadelphia, PA, for plaintiffs Robert D. Slewett and Nathan Esformes.

Robert N. Kaplan, Kaplan, Kilsheimer & Fox, New York City, for plaintiff Michael E. Moss.

Glen DeValerio, Margaret Dobies, Berman, DeValerio & Pease, Boston, MA, for plaintiffs Nicholas Spiro, Stephen Horwitz and Ara Eresian, Jr.

Richard Appleby, Law Offices of Richard Appleby, New York City, for plaintiff Michael Watzky.

David B. Gold, Paul F. Bennett, George Trevor, Gold & Bennett, A Professional Law Corp., San Francisco, CA, for plaintiff Edward Slade.

Jules Brody, Mark Levine, Stull, Stull & Brody, Joseph H. Weiss, Law Offices of Joseph H. Weiss, New York City, for plaintiffs Susan D. Fader and George Strum.

Paul B. Steinberg, Steinberg & Slewett, P.A., Miami Beach, FL, for plaintiff Robert D. Slewett.

David H. Greenberg, Law Offices of David H. Greenberg, Beverly Hills, CA, Stanley Grossman, Marc I. Gross, Shaheen Rushd, Pomerantz Haudek Block & Grossman, David Jaroslawicz, Jaroslawicz & Jaros, New York City, for plaintiff Meir Akerman.

Kenneth A. Jacobsen, Chimicles, Jacobsen & Tikellis, Haverford, PA, Patrick Grannan, Chimicles, Jacobsen & Tikellis, Los Angeles, CA, for Class Action plaintiff Alfred Rosenstein.

Anthony F. Latiolait, Morgan & Wenzel, Los Angeles, CA, Stanley D. Bernstein, Kreindler & Kreindler, New York City, for plaintiffs Richard Trontz, Individually and as Custodian for Robert Trontz under The New York Gifts to Minors Act and as Custodian for Laurie Trontz under the New York Gift to Minors Act, and Scott Trontz With Respect to Count XII Only.

Norman H. Levine, Kelly Ann Coleman, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, CA, for plaintiffs Peter E. Strauss, Panache Productions, Inc. and Plushcell, Ltd. With Respect to Count XIII Only.

Keith E. Eggleton, Bruce G. Vanyo, Denise M. Amantea, David J. Berger, Joshua A. Lipp, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for plaintiffs Prudential–Bache Securities, Inc. and P–B Finance, Ltd.

Leonard Sharenow, Law Offices of Leonard Sharenow, P.C., Santa Monica, CA, for defendant Hal Berman.

Jack I. Samet, Karen Baker, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, Jacob W. Heller, Sigmund S. Wissner–Gross, Heller, Horowitz & Feit, P.C., New York

City, for defendants Steven A. Greenberg and Anametrics Advisors, Inc.

William B. Campbell, Todd E. Gordinier, John H. Kanberg, Eve T. Saltman, Orrick, Herrington & Sutcliffe, Los Angeles, CA, for defendant Ernst & Young, Successor-in-Interest to Ernst & Whinney, and Lead Defense Counsel.

Jesse D. Miller, Calvin House, Meredith Munro–Ehrlich, Fulbright & Jaworski, L.L.P., Los Angeles, CA, for defendants Rauscher, Pierce, Refsnes, Inc., Un Financial Corp., Baer & Co., Inc., Cantor, Fitzgerald & Co., Inc., Evans & Co., Inc., Rosenkrantz, Lyons & Ross, Inc., Steinberg & Lyman and Whale Securities Corp. (the "Non–Managing Underwriter Defendants").

Edward M. Krivda, in pro per.

Jerome H. Craig, Dennis M. Perluss, Gary Plessman, Mark R. McDonald, Hufstedler & Kaus, Los Angeles, CA, Rosenman & Colin, New York City, for defendants Ladenburg, Thalmann & Co., Inc. and Robert Grossmann.

Donald E. Sternberg, Law Offices of Donald E. Sternberg, Woodland Hills, CA, for defendants Harold J. Lipman and Vera Hojecki.

Andrew S. Gelb, Wolf, Rifkin & Shapiro, Los Angeles, CA, Hartley T. Bernstein, Brandeis, Bernstein, New York City, for defendant Randolph K. Pace.

Richard F. Oetting, Paul I. Wapner, Barton, Klugman & Oetting, Los Angeles, CA, Richard L. Brown, Barton, Klugman & Oetting, Newport Beach, CA, for defendant Greenspan and Co. and S. George Greenspan.

Bruce T. Andersen, Woodland Hills, CA, Daniel E. Mancilla, Iron Works, Reseda, CA, for defendant Daniel E. Mancilla, individually and dba D & M Iron Works.

S. Thomas Pollack, Jonathan H. Steinberg, Sara D. Lipscomb, Irell & Manella, Los Angeles, CA, for defendants Hughes Hubbard & Reed and Mark R. Moskowitz.

Terry W. Bird, Jason D. Kogan, Bird, Marella, Boxer, Wolpert & Matz, P.C., Los Angeles, CA, for defendant Neal Dem.

Michael M. Gless, Neal S. Robb, Mitch J. Albert, Keesal, Young & Logan, Long Beach, CA, for defendants Freshman Marantz Orlanski Cooper & Klein and Mark A. Klein.

Elliot D. Burick, Law Offices of Elliot D. Burick, Los Angeles, CA, for defendants J. Richard Charbit, Silverstone Investments, Inc. and Tarchit Inv. Corp.

Anthony Michael Glassman, Glassman & Browning, Inc., Beverly Hills, CA, for defendants Mark Morze and Marbil Marketing Management.

Maurice Rind, in pro per.

Larry G. Baker, C.P.A., in pro per.

Thomas D. Padgett, in pro per.

Mark Roddy, in pro per.

Jerry N. Polevoi, in pro per.

Jack N. Polevoi, in pro per.

Daniel Krowpman, in pro per.

## ORDER

LEW, District Judge.

Defendant Ernst & Young, successor-in-interest to Ernst & Whinney ("E & Y"), has moved in the above captioned action for Summary Adjudication on Class Plaintiffs' Section 10(b)/Rule 10b–5 claim for the commission of a manipulative or deceptive act in connection with the sale of securities (Count III). The matter came up regularly for hearing on July 18, 1994.

Now, having carefully considered all of the papers filed in support of and in opposition to the motions, as well as oral arguments, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Adjudication.

## I. BACKGROUND

ZZZZ Best Co., Inc. ("Z Best"), at one time thought to be the nation's largest carpet cleaning company, was widely regarded as a company which had achieved tremendous financial success prior to its sudden collapse into bankruptcy in 1987. Z Best's founder and largest shareholder, Barry Minkow, was ultimately convicted and imprisoned for fraud and embezzlement.

964

The Class Plaintiffs allege that Z Best's glamorous aura was a sham, and that a massive fraud was perpetrated in connection with the public trading of Z Best securities and the sale of Z Best shares in a public stock offering commencing on December 9, 1986. Plaintiffs allege that the fraud was committed through a series of false and misleading statements and omissions of material fact made in public statements regarding Z Best, its finances, management, and future business prospects. Accordingly, Plaintiffs filed a class action complaint in this Court alleging numerous federal securities law, RICO, and state law violations against a number of Defendants.[1]

Plaintiffs' claims against E & Y arise in part out of E & Y's release of a review report on first quarter interim financial information for the three-month period ending July 31, 1986 (the "Review Report").[2] E & Y's Review Report was included in Z Best's December 1986 offering prospectus and stated that "we are not aware of any material modifications that should be made to the consolidated interim financial statements referred to above for them to be in conformity with generally accepted accounting principles."

Review Report, p. 35 of Prospectus (attached as Exhibit A to the declaration of Frank M. Tse). Plaintiffs allege that E & Y did however know of major discrepancies in Z Best's internal accounting procedures and that the figures released by Z Best were not accurate. Thus, Plaintiffs contend that E & Y knowingly engaged in a fraudulent scheme resulting in the issuance of the Review Report which contained misrepresentations and/or omissions that directly affected the purchase or sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)),[3] as well as Rule 10b–5 of the Securities Exchange Commission's ("SEC") regulations (17 C.F.R. § 240.10b–5).[4]

In addition to the Review Report, Plaintiffs contend that E & Y is also liable for its involvement in the creation, review or issuance of approximately thirteen other publicly released statements related to the Z Best fraudulent scheme.[5] These additional statements include: 1) an October 29, 1986 press release issued by Z Best; 2) a December 9, 1986 press release issued by Z Best; 3) a public announcement made on December 18,

1. The class was certified in an Order dated July 27, 1992.

2. A review report on "interim financial information consists principally of obtaining an understanding of the system for the preparation of interim financial information, applying analytical review procedures to financial data, and making inquiries of persons responsible for financial and accounting matters." Review Report, p. 35 of Prospectus (attached as Exhibit A to Declaration of Frank M. Tse).

3. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful:
for any person, *directly or indirectly,* ... (b) [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any *manipulative or deceptive device or contrivance* in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

4. Rule 10b–5 of the Code of Federal Regulations ("CFR"), adopted by the Securities and Exchange Commission ("SEC") in 1942, casts the Section 10(b) proscription in similar terms:

It shall be unlawful for any person, directly or indirectly ...
(a) [t]o employ any device, scheme, or artifice to defraud,
(b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.
17 CFR § 240.10b–5 (1993).

5. Plaintiffs' complaint does not specifically identify which of the numerous defendants made which of the alleged misrepresentations alluded to in the complaint. Thus, it is difficult to determine, based only on the complaint, exactly what E & Y alone is accused of doing. However, during the course of discovery, Plaintiffs identified thirteen alleged misrepresentations, other than the December 1986 Review Report, upon which they base their Section 10(b)/Rule 10b–5 claims against E & Y. *See* Plaintiffs' Interrogatory Responses, pp. 11–37.

1986 by Z Best and Bruce T. Anderson; 4) a Report issued on March 9, 1987 by Ladenburg, Thalmann & Co., Inc. ("Ladenburg") and Robert Grossmann; 5) a Form 10–Q quarterly report issued on March 16, 1987 by Z Best; 6) a press release issued on March 16, 1987 by Z Best and Greenberg; 7) a press release issued on April 16, 1987 by·Z Best and Steven A. Greenberg; 8) another report by Ladenburg and Grossmann issued on April 20, 1987; 9) a supplement to the December 9, 1987 prospectus issued on April 28, 1987 by Z Best; 10) a press release issued on May 18, 1987 by Z Best and Greenberg; 11) another press release issued by Z Best and Anderson on May 28, 1987; 12) a Form 8–K report issued by Z Best on June 17, 1987; and finally, 13) a public announcement made by Z Best on June 17, 1987. Gillespie Decl., Exhibits "A" through "M." [6] While E & Y contends that it had nothing to do with the issuance of these additional statements, Plaintiffs vigorously assert that E & Y was intricately involved in the creation, review or issuance of these additional public statements. There is clearly a disputed issue of fact as to this point. However, Plaintiffs have cited no facts in their voluminous statement of disputed facts which show that these statements included any public indication within them that E & Y had anything to do with their existence. None of these additional statements attributes its existence to E & Y or even hints that E & Y might have been involved in the issuance of any of those statements.[7]

Plaintiffs have also identified alleged omissions which are apparently unrelated to the Review Report that purportedly give rise to a Section 10(b)/Rule 10b–5 claim against E & Y: 1) E & Y's failure to reveal or correct the misrepresentations made in the additional public statements; 2) the failure to avoid passing on Z Best's quarterly financials (Fifth Amended Complaint, ¶ 100); 3) the failure to disclose that E & Y "knew or believed that at least some of the insurance

restoration business of Z Best was a sham," and that Z Best had internal control problems (Fifth Amended Complaint, ¶ 144); and 4) the failure to disclose the reasons it resigned as independent auditor for the Company on June 2, 1987 (Fifth Amended Complaint, ¶ 144). All of these alleged misrepresentations or omissions, other than those included in or derived from the Review Report, shall be collectively referred to as the "additional misstatements or omissions."

Defendant E & Y now brings this motion for Summary Adjudication on two entirely separate grounds. First, E & Y contends that Plaintiffs cannot base their Section 10(b)/Rule 10b–5 claim on any of the publicly released statements, other than the Review Report, because of the U.S. Supreme Court's elimination of aider and abetter liability in its recently decided case of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, et. al.,* — U.S. —, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Defendant concedes that *Central Bank* does not affect Plaintiffs' Section 10(b)/Rule 10b–5 claim as it relates to E & Y's alleged misrepresentations (omissions) in the Review Report. However, Defendant's second ground for summary adjudication is that Plaintiffs cannot, as a matter of law, prove that Plaintiffs *relied* on E & Y's Review Report. E & Y bases this contention on a legal doctrine known as the "bespeaks caution" doctrine, which essentially holds that if a public statement includes cautionary language warning the reader not to rely on the statement, then any purported reliance is not reasonable as a matter of law.

## II. DISCUSSION

### A. *Summary Judgment Standard.*

The defending party "may, *at any time,* move with or without supporting affidavits for a summary judgment...." Fed.R.Civ.P. 56(b). Summary judgment is appropriate when there is no genuine issue of material

---

6. Plaintiffs also contend that liability exists for a "cold comfort" letter issued by E & Y to the underwriters as well as oral assurances given to the underwriters by E & Y which enabled the public offering to be issued.

7. Plaintiffs essentially concede in their opposition papers that E & Y did not itself release the additional statements to the public. Plaintiffs state that "despite the fact that E & W did not actually issue those statements, it knew that they were based, in part, on its statements." Plaintiffs' Supplemental Opposition, at 29.

fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of identifying this absence of a genuine material issue of fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On the other hand, the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Nonmoving parties can meet this requirement by use of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* However, conclusory allegations unsupported by factual data are insufficient to create a triable issue of fact so as to preclude summary judgment. *Exxon Corp. v. Fed. Trade Comm'n,* 663 F.2d 120, 127 (D.C.Cir.1980).

### B. Defendant's First Ground For Summary Judgment: Elimination of Aider and Abetter Liability.

E & Y first contends that summary adjudication must be granted in its favor as to every allegedly misleading statement that Plaintiffs base their Section 10(b)/Rule 10b–5 claim on except for the allegation of fraud in relation to the Review Report. E & Y argues that except for the Review Report, each of the additional misstatements or omissions cited by Plaintiffs is only a secondary act and therefore constitutes an allegation of aiding and abetting liability. E & Y points out that the U.S. Supreme Court recently held in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., et al.,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), that "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1455. Thus, E & Y contends that all the financial reports, press releases, supplements to the prospectus, etc., that were released to the public by Z Best and attributable only to Z Best or others, even if reviewed, edited or approved by E & Y, are not actionable against E & Y as violations of Section 10(b)/ Rule 10b–5.

Plaintiffs, on the other hand, contend that the Supreme Court in *Central Bank* merely held that only when a secondary actor has not committed a manipulative or deceptive act itself but has only assisted another in doing so, is that secondary actor immune from Section 10(b)/Rule 10b–5 liability. In other words, Plaintiffs contend that if the so called secondary actor knowingly provides incorrect information or omits to correct information and either gives this information to the primary actor or actively participates in the creation of the misleading statement issued by the primary actor, then the so called secondary actor has committed a *primary violation* of Section 10(b). Plaintiffs assert that E & Y was actively involved in the writing and reviewing of the financial reports and press releases provided to the public by Z Best, and knowingly included information which was misleading and which was relied upon by the market. Thus, Plaintiffs contend that E & Y has committed a *primary* violation of Section 10(b)/Rule 10b–5 as a result of its participation in the additional misstatements or omissions aside from the Review Report.

### 1. Application of the Central Bank Ruling to this Case.

In *Central Bank,* the defendant, Central Bank of Denver, acted as the indenture trustee for a sale of bonds secured by real property. Although the trustee was required to hold as security real estate worth 160% of the value of the bonds, Central Bank was specifically warned that falling property values in Colorado Springs had rendered inadequate the property which it was holding as security for prospective bond purchasers. Prior to the sale of the bonds, Central Bank obtained evidence that the actual value of its security was not in conformance with the bond covenants, but was persuaded by the issuer not to take corrective action. When the bond issue went into default and bondholders discovered that Central Bank had knowingly and affirmatively delayed a new appraisal of the secured property, thereby allowing the bond issue to occur even though the bonds may not have been adequately secured, the bank was sued under Section

10(b)/Rule 10b–5 for its role in assisting in the alleged fraud.

The Supreme Court expressly held that the plaintiff could "not maintain an aiding and abetting suit under § 10(b) ..." against the Central Bank of Denver because "the text of § 10(b) does not prohibit aiding and abetting...." [8] *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1455. The Supreme Court acknowledged that prior to its holding in *Central Bank,* numerous Courts of Appeals permitted aider and abetter liability. *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1444.[9] Thus, there is little doubt that the Supreme Court in *Central Bank* made a significant change in Section 10(b)/Rule 10b–5 liability.

■ The Supreme Court's opinion focused on the basic requirement for Section 10(b) liability, i.e., that there must be a deceptive misstatement (or omission) or the commission of a manipulative act on the part of a defendant. *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1448. Prior to *Central Bank,* courts did not make a manipulative or deceptive act on the part of the aider and abetter a requirement for liability under a Section 10(b)/Rule 10b–5 claim. In fact, in this Circuit the only requirements for aider and abetter liability are: "(1) the existence of an independent primary wrong, (2) actual knowledge or reckless disregard by the alleged aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the wrong." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991), citing *Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646, 652 (9th Cir. 1988) (per curiam), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). There is no requirement in the Ninth Circuit's test that the aider and abettor commit

a *manipulative or deceptive act* or that the injured parties even *rely* on the substantial assistance given by the aider and abettor. The Supreme Court in *Central Bank* recognized that "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity; aiding and abetting liability reaches persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do." *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1447. Thus, the Supreme Court in *Central Bank* held that aider and abettor liability, as previously defined by the lower courts, does not meet the minimum requirements for liability mandated by Section 10(b). Therefore, a person cannot be held liable under Section 10(b)/Rule 10b–5 for simply aiding and abetting a primary violation of the provisions. Plaintiffs in this case base their Section 10(b)/Rule 10b–5 claim, in part, on an aider and abetter theory. Fifth Amended Consolidated Complaint, at 128–31. *Therefore, to the extent that Plaintiffs' claims in this case are based on an aider and abetter theory of liability under Section 10(b)/Rule 10b–5, this Court hereby GRANTS Defendant E & Y's motion for summary adjudication as to this issue.*

However, just because summary adjudication has been granted in favor of E & Y as to the aiding and abetting portion of Plaintiff's claim does not necessarily mean that Defendant E & Y is free from liability under the Securities Acts for its involvement in the Z Best fraudulent scheme. As the Supreme Court noted, "[a]ny person or entity, including a lawyer, *accountant,* or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may

---

**8.** The *Central Bank* case was a 5 to 4 decision delivered by Justice Kennedy and joined by Chief Justice Rehnquist as well as Justices O'Connor, Scalia and Thomas. Justice Stevens wrote a dissent in which Justices Blackmun, Souter and Ginsburg joined.

**9.** *See also, Brennan v. Midwestern Life Ins. Co.,* 259 F.Supp. 673 (N.D.Ind.1966), *aff'd,* 417 F.2d 147 (7th Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); *Cleary v. Perfectune, Inc.,* 700 F.2d 774, 777 (1st Cir.1983); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731,

740 (10th Cir.1974). The dissent goes further and asserts that "all 11 Courts of Appeals to have considered the question have recognized a private cause of action against aiders and abettors under § 10(b) and Rule 10b–5." *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1456 (J. Stevens dissenting). For Ninth Circuit authority on aider and abetter liability, see *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991) (Ninth Circuit holding that an aiding and abetting cause of action arises from Section 10(b)/Rule 10b–5).

be liable as a *primary* violator under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met." *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1455. Indeed, Plaintiffs in this case have also alleged *primary* violations of Section 10(b)/ Rule 10b–5 against E & Y. Fifth Amended Consolidated Complaint, at 128–31. Thus, the real issue presented by this motion is whether *Central Bank's* prohibition of aider and abetter liability also limits the scope of primary liability under Section 10(b)/Rule 10b–5.

2. *Whether The Additional Misstatements (Omissions), Other Than the Review Report, Give Rise to Primary Liability.*

a. *Elements Required to Prove A Primary Violation of Section 10(b)/Rule 10b–5.*

■ In considering what conduct is prohibited by Section 10(b), the Supreme Court in *Central Bank* reiterated "that the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act" in connection with the sale of securities. *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1448; *see also Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473–74, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). The statute does not prohibit simply the giving of aid to a person who commits a manipulative or deceptive act. *Central Bank,* —— U.S. at ——, 114 S.Ct. at 1448. Furthermore, the Ninth Circuit has stated that "[t]hree elements must be pleaded and proved in [primary] 10b–5 actions: '(1) conduct by the defendants proscribed by the rule; [10] (2) a purchase or sale of securities "in connection with" such proscribed conduct; and (3) resultant damages to the plaintiffs.'" *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1485 (9th Cir.1991) (footnote added), quoting *Woodward v. Metro Bank,* 522 F.2d 84, 93 (5th Cir.1975); *see also, SEC v. Rogers,* 790 F.2d 1450, 1458 (9th Cir.1986). It is also well settled that "[a] plaintiff must show reliance on the defendant's misstatement or omission to recover under 10b–5."

*Central Bank,* —— U.S. at ——, 114 S.Ct. at 1449, citing *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988).

While Defendant E & Y does not assert this motion in terms of Plaintiffs' ability to prove each of the required elements of a primary claim, E & Y does raise questions as to Plaintiffs' ability to prove two of the necessary elements of primary liability: 1) whether a manipulative or deceptive act has been committed, and if so 2) whether Plaintiffs relied on the alleged manipulative or deceptive acts. E & Y argues that the *Central Bank* decision affects these two requirements in Plaintiffs' primary Section 10(b)/Rule 10b–5 claim.

b. *Whether E & Y's Alleged Participation In The Additional Misstatements or Omissions Constitutes A Manipulative or Deceptive Act.*

Defendant E & Y contends that *Central Bank* "eliminate[s] claims brought against all those alleged to have 'participated' in the primary wrongdoer's statement but not to have made a statement" to the public directly. E & Y Supp.Mem. of Ps and As, at 9. In other words, E & Y argues that all the additional acts or omissions alleged against it, other than the Review Report, were not misstatements *made* by E & Y or omissions which E & Y had a duty to disclose, and therefore E & Y concludes that it cannot be held primarily liable under Section 10(b)/ Rule 10b–5.

Plaintiffs, on the other hand, argue that anyone who directly helps to prepare a misstatement (i.e., a quarterly financial report, press release, prospectus, etc.), which is released to the investing public, may be held *primarily* liable for creation of a deceptive device, even though the device is technically released to the outside world by someone else, is attributable to someone else, and does not inform the reader that the aider and abetter had anything to do with the document. In Plaintiffs' own words, they explain that

despite the fact that E & [Y] did not actually issue those [additional] state-

10. *See* footnote 4, *supra.*

ments, it knew that they were based, in part, on its statements. Knowing that such false and misleading statements were being disseminated to the public, E & [Y] may be held to have participated in the making of those misrepresentations such that they may be found primarily liable for § 10(b) violations.

Plaintiffs' Opposition, at 29.

Although the Section 10(b) requirement of a "manipulative or deceptive" act was conceded not to exist in *Central Bank*, the Supreme Court's opinion makes clear that more than simply knowing assistance with the underlying fraudulent scheme is required for Section 10(b) liability.[11] Thus, to be primarily liable under Section 10(b)/Rule 10b–5, Plaintiffs in this case must have alleged and submitted evidence that E & Y not only provided accounting assistance while it knew that Z Best and its officers were committing the fraud, but that its *own* acts were manipulative or its statements (omissions) were deceitful. It can be summarily decided that Plaintiffs in this case have failed to provide any evidence that E & Y committed a "manipulative" act. The Supreme Court has stated that the prohibition against "manipulative" practices in Section 10(b) is "virtually a term of art" which "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976); *SEC v. Wills*, 472 F.Supp. 1250, 1269 n. 17 (1978). Because "manipulation" is not a factor in this case, Plaintiffs must prove that E & Y engaged in some form of deception that is prohibited by Rule 10b–5.

■ To determine whether E & Y violated one of the subsections of Rule 10b–5, the Court must examine the additional misstatements or omissions, other than the Review Report and its resulting omissions, that might give rise to liability under Rule 10b–5. As previously stated in footnote 4, *supra*, a violation of Rule 10b–5 requires a showing of a) the employment of any device, scheme or artifice to defraud; or b) the making of any untrue statement of a material fact or omission of a material fact; or c) the engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. *See* 17 CFR § 240.10b–5 (1993). Plaintiffs' complaint clearly alleges violations of each of these provisions of Rule 10b–5. Plaintiff's Fifth Amended Consolidated Complaint, at 128–31.

### i. Misrepresentations Under Subsection (b):

Defendant E & Y focuses most of its motion on subsection (b) of Rule 10b–5 which

11. The Central Bank of Denver was not sued for a primary violation of Section 10(b)/Rule 10b–5. In fact, the plaintiff's complaint in that case alleged only that Central Bank was "secondarily liable under § 10(b) for its conduct in aiding and abetting the fraud." *Central Bank*, — U.S. at —, 114 S.Ct. at 1455. Moreover, Plaintiff's counsel in that case expressly conceded that the Central Bank of Denver had not itself committed a manipulative or deceptive act. *Id.* Thus, the Supreme Court did not have the opportunity to address the issue of whether the Central Bank of Denver could have been found primarily liable under Section 10(b)/Rule 10b–5 had such an allegation been added to the complaint and had the issue of manipulation or deceit not been conceded. Interestingly, an examination of the underlying facts in the *Central Bank* case, as stated in the Court of Appeals opinion, reveals that the Plaintiffs did allege that the Central Bank of Denver had committed the affirmative act of intentionally delaying the new property appraisal until after the bonds had been issued. *See First Interstate Bank of Denver v. Pring*, 969 F.2d 891, 902 (1992), *rev'd, Central Bank*, — U.S. —, 114 S.Ct. 1439 (1994). Plaintiffs in that case might have been able to allege that this affirmative act was a manipulative or deceptive act under Section 10(b). Whether a primary violation could have been proven in that case would require speculation which goes beyond the scope of this Court's knowledge of the facts in that case. While it might be argued that the Supreme Court could not have ignored the facts of that case and therefore intended to send the message that such affirmative assistance did not rise to the level of a primary violation, such an inference will not be made by this Court. The Supreme Court did not and could not reach the issue of the affirmative assistance because no primary violation of Section 10(b) had been alleged and Plaintiffs had conceded that the Central Bank of Denver had not committed a manipulative or deceptive act. Thus, this Court must find that only the requirements for aider and abetter liability, rather than primary liability, were addressed by the Supreme Court in *Central Bank*.

prohibits materially misleading statements or omissions. E & Y must recognize that there clearly exists a disputed issue of fact as to whether E & Y actively participated in the preparation, review or release of the additionally alleged acts (excluding the Review Report). The voluminous statement of disputed facts submitted by Plaintiffs make this point abundantly obvious. However, E & Y notes that there is no disputed issue of fact as to whether the additional statements released by Z Best or others could be reasonably attributed to E & Y by the investing public. Indeed, Plaintiffs have submitted no evidence to show that these statements contained any indication within them that E & Y prepared them, reviewed them, or had anything to do with their issuance. Because of this failure of the additional statements to attribute themselves to E & Y, and because no reasonable person could so attribute them to E & Y, Defendant E & Y argues that Plaintiffs cannot prove that the public statements, other than the Review Report, violate subsection (b).

 However, Plaintiffs argue that it has submitted sufficient evidence to suggest that E & Y's participation in the creation of the additional public statements was extensive enough to attribute those misstatements and omissions to E & Y. While this case creates a close call and perhaps one of first impression, this Court agrees with Plaintiffs' position. The Ninth Circuit held in *SEC v. Seaboard*, 677 F.2d 1301 (9th Cir.1982), that "[a]n accountant may be liable for direct violation of the rule [Rule 10b–5] if its *participation* in the misrepresentation is direct and if it knows or is reckless in not knowing that the facts reported in the prospectus materially misrepresent the condition of the issuer." *Id.* at 1312 (emphasis added).[12] Moreover, the holding in *Union Carbide Corp. Cons. Prod. Bus. Sec. Lit.*, 676 F.Supp. 458 (S.D.N.Y.1987) is even more applicable to the facts in this case. In *Union Carbide*, the

accountants, Morgan Stanley, argued that a financial forecast issued by Union Carbide could not be attributed to Morgan Stanley for Rule 10–5 purposes because it did not itself announce the projections. However, the court held that because Morgan Stanley prepared the financial projections and fully participated in the fraud, the misstatements could be attributed to Morgan Stanley. *Union Carbide*, 676 F.Supp. at 467–69. The court expressly held that "[p]reparation of misleading projections or provision of the raw data for such projections can constitute participation in a misrepresentation, and lead to primary 10b–5 liability as was held in *Seaboard*." *Union Carbide*, 676 F.Supp. at 468–69.

This Court agrees with the reasoning in *Seaboard* and *Union Carbide*. While the investing public may not be able to reasonably attribute the additional misstatements and omissions to E & Y, the securities market still relied on those public statements and anyone intricately involved in their creation and the resulting deception should be liable under Section 10(b)/Rule 10b–5. Defendant E & Y's motion for summary adjudication of the issue of its liability under subsection (b) of Rule 10b–5 is hereby **DENIED**.

### ii. *Omissions Allegations Under Subsection (b):*

Plaintiffs also base their Section 10(b)/Rule 10b–5 claims on E & Y's failure to disclose or to stop the Z Best fraud, i.e., omissions based claims. Because this portion of E & Y's motion does not address the claims derived from E & Y's issuance of the Review Report, only the omissions allegations arising from the additional misstatements will be addressed. In particular, Plaintiffs contend that E & Y had a duty to correct any misleading statements issued by Z Best or others that E & Y might have been involved in reviewing, editing or issuing. Plaintiffs also

---

**12.** This Court is cognizant of the fact that the court in *Seaboard* expressly noted that the accountant "certified the financial statements contained in the prospectus." *Seaboard*, 677 F.2d at 1305. Although in the case at bar E & Y did not certify or publicly associate itself with the additional misstatements or omissions, the Ninth Circuit's holding in *Seaboard* that sufficient evidence

of participation in the public statements of others can cause the statements to be attributed to the participator, is controlling. At the very least a disputed issue of fact exists as to whether E & Y's participation was sufficient enough to attribute the additional public statements or omissions to E & Y.

apparently suggest that because E & Y knew Z Best's true financial condition, E & Y had a general "whistle-blower" duty to disclose this information to the investing public. Finally, Plaintiffs assert that E & Y had, at the very least, a duty to disclose the reasons for its resignation.

 Both the Supreme Court and the Ninth Circuit have clearly stated that an alleged failure to act cannot give rise to a Section 10(b) claim unless plaintiffs establish a specific relationship which creates such a duty. *See Dirks v. SEC*, 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983); *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980); *Central Bank*, —— U.S. at ——–——, 114 S.Ct. at 1446–47; *Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97; *Wessel v. Buhler*, 437 F.2d 279, 283 (9th Cir.1971). However, a general duty does exist to communicate any additional information, which in its absence would render misleading that which was already communicated. *Rose v. Arkansas Valley Envt'l. & Util. Auth.*, 562 F.Supp. 1180, 1207 (W.D.Mo.1983).

██ If E & Y is found at trial to have sufficiently participated in the preparation of the additional misstatements or omissions such that they are attributed to E & Y, then E & Y will likewise be found to have a duty to disclose or correct these previously released misrepresentations. Moreover, if any of the additional statements incorporated data prepared by E & Y in its Review Report, and the Review Report is found to have violated Rule 10b–5, then E & Y will also be found to have had a duty to correct any subsequent use of that information or inform parties that might potentially rely on it.

This Court finds that there are disputed issues of fact regarding E & Y's duty to disclose the existence of the additional misstatements or omissions, and therefore summary adjudication on this issue is also **DENIED**.

iii. *E & Y's Liability Under Subsections (a) and (c) For the Additional Misstatements or Omissions:*

Plaintiffs also allege in their complaint that the additional acts allegedly committed by E & Y are actionable as deceptive devices, schemes, practices, or courses of business under Rule 10b–5 subsections (a) and (c). A plain reading of these subsections reveals that any deceptive acts or practices in connection with the sale of securities are prohibited.

It appears that the scope of deceptive devices or schemes prohibited by subsections (a) and (c) is quite extensive. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) (stating that "[n]o doubt Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices"); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386, 103 S.Ct. 683, 689, 74 L.Ed.2d 548 (1983) (stating that "[i]n furtherance of its objective, § 10(b) makes it unlawful to use '*any* manipulative or deceptive device or contrivance' in connection with the purchase or sale of any security" (emphasis in original)); *Superintendent of Insurance v. Bankers Life and Casualty Co.*, 404 U.S. 6, 11 n. 7, 92 S.Ct. 165, 168 n. 7, 30 L.Ed.2d 128 (1971) (" '[Section] 10(b) and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involved a garden type variety of fraud, or present a unique form of deception' " (emphasis in original) (quoting *A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir.1967)).

██ Thus, the terms of the statute and rule extend liability to *all* participants in *any* scheme or device that operates as a fraud on investors. In *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court observed that "the second subparagraph of the rule [subsection (b) ] specifies the making of an untrue statement of a material fact and the omission to state a material fact," but that "[t]he first and third subparagraphs [subsections (a) and (c) ] are not so restricted." *Id.*, 406 U.S. at 152–53, 92 S.Ct. at 1471–72. The Supreme Court held in *Affiliated Ute* that the defendants violated Section 10(b) and rule 10b–5 when they participated in "a 'course of business' or a 'device, scheme or artifice' that operated as a fraud"—even

though these defendants had not themselves said anything that was false or misleading. *Id.*, 406 U.S. at 153, 92 S.Ct. at 1472; *see also In re Union Carbide Corp. Consumer Products Business Secs. Litig.*, 676 F.Supp. 458, 467 (S.D.N.Y.1987) (holding that even if an accountant could not be found liable under subsection (b) because the misleading statements were not directly attributable to it, the accountant could still be liable under subsections (a) and (c)).

■ This Court finds that liability under Section 10(b)/Rule 10b–5 is not limited to the making of materially false and misleading statements or omissions. As the Ninth Circuit held in *Blackie v. Barrack*, 524 F.2d 891, 903 n. 19 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), "Rule 10b–5 liability is not restricted solely to isolated misrepresentations or omissions; it may also be predicated on a 'practice, or course of business which operates . . . as a fraud . . . .'" In *Blackie*, the court explained that a fraud-on-the-market case should not be fragmented into individual misrepresentations, but may be considered as a single overall scheme to defraud in imposing liability under Rule 10b–5. *Id.* Any participant in such a "practice or course of business" would be primarily liable as a direct violator of Rule 10b–5 and Section 10(b).

■ Because of the broad scope of liability imposed by subsections (a) and (c), this Court finds that Plaintiffs have raised a disputed issue of fact regarding E & Y's alleged direct assistance in preparing the additional public statements and its involvement in the Z Best fraudulent scheme. Plaintiffs submitted extensive declarations, exhibits and other evidence which suggests that E & Y was involved in the creation of allegedly misleading statements released to the public by Z Best. The factual issues raised by Plaintiffs suggest that E & Y could not have properly verified the figures in the public statements, especially with the severe limitations agreed to by the E & Y accountants. Plaintiffs also submitted evidence showing that E & Y may

have helped to draft press releases and financial statements publicly released by Z Best, and also modified the financial data contained in those documents, which were allegedly issued only after E & Y approved them. There is evidence suggesting that E & Y knew about the fraudulent scheme, or acted with reckless disregard in furthering the fraudulent scheme by approving or altering financial statements. These alleged acts, if proven at trial, may be sufficient to constitute a scheme, device, practice or course of business such that subsections (a) and (c) would be violated.

In short, because Plaintiffs have alleged a primary violation against E & Y for its alleged participation in the creation, review or issuance of the additional public statements or omissions, and because Plaintiffs have raised disputed issues of fact regarding E & Y's involvement in the scheme or device to defraud, summary adjudication of the "manipulative or deceptive" act requirement of Plaintiff's primary Section 10(b)/Rule 10b–5 claim is **DENIED.**

c. *Whether Plaintiffs Can Show Reliance.*

The element of "reliance" is the second ground upon which E & Y attempts to challenge Plaintiffs' assertion of primary liability under Section 10(b)/Rule 10b–5. It is well settled that "[a] plaintiff must show reliance on the defendant's misstatement or omission to recover under 10b–5." *Central Bank*, 114 S.Ct. at 1449, citing *Basic Inc. v. Levinson*, 485 U.S. at 243, 108 S.Ct. at 989–90. Reliance provides the necessary causal link between a defendant's violation of the rule and the plaintiff's purchase or sale of a security. Under certain circumstances, reliance can be presumed in omissions cases where a duty to disclose exists,[13] and in affirmative misrepresentation cases involving a viable public market for the security.[14]

E & Y contends that the Supreme Court in *Central Bank* held that the plaintiffs in that case could not have relied on the acts committed by Central Bank of Denver and therefore liability could not exist under Section

---

**13.** *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152–53, 92 S.Ct. 1456, 1471–72, 31 L.Ed.2d 741 (1972).

**14.** *See Basic Inc. v. Levinson*, 485 U.S. at 243, 108 S.Ct. at 989–90.

10(b). Likewise, E & Y contends that the Plaintiffs in this case could not have relied on E & Y's alleged participation in the preparation, review, and approval of the additional misleading statements or omissions because none of those statements were reasonably attributable to E & Y. Therefore, E & Y contends that the essential element of reliance in a Section 10(b)/Rule 10b–5 claim is missing.

Plaintiffs contend that the ruling in *Central Bank* is not applicable in this case because the reliance issue discussed by the Supreme Court only dealt with the plaintiffs' failure to *actually* rely on the misrepresentations. Plaintiffs point out that in our case, the class Plaintiffs are entitled to rely on the market price of the securities pursuant to the fraud-on-the-market presumption of reliance. Thus, Plaintiffs argue that the class plaintiffs need not have seen the misleading documents issued by Z Best, they need only have relied on the market price.

The Supreme Court's reliance discussion in *Central Bank* was much less sweeping than E & Y suggests. The Supreme Court in *Central Bank* simply held that under the then accepted test for aider and abetter liability, reliance was not a required element for such liability. The Court was disturbed by the observation that if aider and abetter liability was allowed to continue, a defendant could be found liable under Rule 10b–5 even though at least one element critical for recovery under Section 10(b) was absent: reliance. *Central Bank,* —— U.S. at ———— ——, 114 S.Ct. at 1449–50. Therefore, the Supreme Court held that aider and abetter liability, which lacked a reliance requirement, failed to meet the minimum standards for liability under Section 10(b)/Rule 10b–5. The Supreme Court made no determination regarding the specific facts in that case or in particular whether the plaintiff actually relied on Central Bank of Denver's actions or representations.

In addition, Plaintiffs argument that the fraud-on-the-market theory proves reliance in this case is logically incomplete and misses Defendant's point. The fraud-on-the-market theory only replaces individual proof of reliance with a classwide presumption that the market has absorbed all public information. *Basic Inc. v. Levinson,* 485 U.S. at 246–47, 108 S.Ct. at 991. The fraud-on-the-market presumption obviously still requires that the market rely on the statements or omissions of some identified defendant. While the class Plaintiffs in this case can indeed rely on the market price of the securities, the market itself must still have relied on the prohibited acts committed by E & Y. It is true, as E & Y argues, that the market never knew about E & Y's involvement with the additional Z Best statements or omissions (other than the Review Report) because the statements were issued by Z Best and only attributable to Z Best. However, because this Court has already held that E & Y can be held liable for the additional misrepresentations and omissions if Plaintiffs can prove E & Y's participation in the preparation or issuance of those additional statements was so extensive that the statements should reasonably be attributed to E & Y, the market need only rely on the statements or omissions, not E & Y's participation. Thus, the focus of the reliance issue is shifted from E & Y's alleged participation to the actual misleading statements or omissions themselves.

In addition, Plaintiffs' other ground for liability against E & Y is pursuant to subsections (a) and (c) of Rule 10b–5. Consequently, Plaintiffs or the market need only rely on the underlying fraudulent scheme in which E & Y allegedly participated. The individual statements or omissions alleged by Plaintiffs are not in and of themselves the focus for the reliance issue under subsections (a) and (c). *See Shores v. Sklar,* 647 F.2d 462, 469 (5th Cir.1981). Instead, the market's overall reliance on the Z Best fraudulent scheme, or at least the additional statements as released and issued by Z Best, is sufficient to satisfy the reliance element in the Rule 10b–5(a) & (c) claims.

### C. *E & Y's Second Ground For Summary Adjudication: Whether The "Bespeaks Caution" Doctrine Prevents a Section 10(b)/Rule 10b–5 Claim Against E & Y Arising From the Review Report.*

E & Y also moves for summary adjudication, pursuant to the "bespeaks caution" doc-

trine, on that portion of Plaintiffs' Section 10(b)/Rule 10b–5 claim arising from E & Y's issuance of its Review Report.

■ Courts in a number of Circuits have embraced the "bespeaks caution" doctrine, holding that, as a matter of law, disappointed investors asserting a Section 10(b) cause of action cannot claim to have *relied* on allegedly misleading statements while ignoring cautionary language accompanying the same offering materials. *See Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) (holding that the court is "not inclined to impose [Section 10(b)] liability on the basis of statements that clearly 'bespeak caution'"); *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 949 F.2d 243, 245–46 (8th Cir.1991) (holding that "plaintiffs could not base a federal securities fraud claim [against accountants] on any misrepresentation or omission in the feasibility study which was addressed by the repeated, specific warnings of significant risk factors and the disclosures of underlying factual assumptions also contained therein"); *In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 515–16 (9th Cir. 1991) (holding that warnings regarding the risks of cost and production projections prevented Section 10(b)/Rule 10b–5 claim).[15]

E & Y asserts the "bespeaks caution" doctrine to argue that Plaintiffs could not have reasonably relied on the Review Report as a matter of law. E & Y contends that it did not audit Z–Best's financials, it simply issued a "Review Report" which stated that E & Y looked at the audited financials conducted by another accounting firm and did not find any material mistakes in the financial statements. The Prospectus specifically stated that E & Y "did not audit and they do not express an opinion on that interim financial information." Prospectus, at 31 (attached as exhibit "A" to decl. of Frank M. Tse). Moreover, the Review Report stated that the review was "substantially less in scope than an examination in accordance with generally accepted auditing standards." *Id.* at 35. Finally, the Prospectus stated: "[a]ccordingly, the degree of reliance on their report on such information should be restricted in light of

the limited nature of the review procedures applied." *Id.* at 31. Because of these disclaimers, E & Y asserts that this Court should hold, as a matter of law, that no investor could have reasonably relied on the Review Report.

Plaintiffs, on the other hand, argue that the "bespeaks caution" doctrine applies only to *future* projections, not prior (already completed) financial statements, and thus is inapplicable in this case. There is strong support for Plaintiffs' argument. Most courts applying the bespeaks caution doctrine do so in relation to allegedly misleading statements regarding *expected or future* events or financial conditions. *See e.g., Friedman v. Arizona World Nurseries Ltd.,* 730 F.Supp. 521, 539–40 (S.D.N.Y.1990), *aff'd,* 927 F.2d 594 (2d Cir.1991) (expressly disallowing Section 10(b) claim for future expectation statements but allowing the claims to go forward for statements regarding then-existing facts). Logically, the doctrine would best apply to predictions and statements that are speculative in nature because of the inherent risk in predicting the future. The doctrine loses its logical purpose when applied to statements made about already existing information like the Z Best audited financials covering an already completed quarter. Indeed, the Ninth Circuit has succinctly stated the contradiction between words of caution warning against future versus already existing events:

'To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.'

*In Re Convergent Technologies Securities Lit.,* 948 F.2d 507, 515 (9th Cir.1991), quoting *Huddleston v. Herman & MacLean,* 640 F.2d 534, 544 (5th Cir.1981), *aff'd in relevant part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

The information included in the Review Report had nothing to do with future predictions or speculative conclusions. Instead, the whole purpose of the Review Report was to

---

15. *See also, In re Worlds of Wonder Sec. Litig.,* 814 F.Supp. 850 (N.D.Cal.1993); *Kenney v. Deloitte, Haskins & Sells,* 1992 WL 551108 (N.D.Cal. Sept. 2, 1992).

verify accounting procedures which already existed and to verify the resulting financials which also already existed. The conclusions in the Review Report did not specifically caution investors to not rely on future predictions, but instead cautioned investors about financial figures that E & Y allegedly already knew were false. Moreover, the items included in the Review Report regarded E & Y's own observations and investigations, and were not completely based on information given to it by third parties.

For these reasons, this Court finds that the bespeaks caution doctrine is not applicable in this case. Therefore, E & Y's motion for summary adjudication on the "bespeaks caution" doctrine is hereby DENIED. This Court declines E & Y's invitation to hold that, as a matter of law, no investor could have reasonably relied on the information stated in E & Y's Review Report.

### D. *Whether The Superseding Quarterly Reports Limit E & Y's Liability to Only Specific Class Plaintiffs.*

In the alternative to the "bespeaks caution" doctrine, E & Y contends that summary adjudication should be granted in its favor as to specific class Plaintiff's who purchased Z Best stock after the Review Report had been superseded by subsequently released financial statements. In other words, E & Y argues that only investors who purchased stock during the reasonable life of the Review Report can state a cause of action. However, investors who purchased stock after the Review Report was superseded could not have *reasonably* relied on the Report as a matter of law.

At least one court has held that reliance on financial statements becomes unreasonable once those statements have aged. *See CMNY Capital, L.P. v. Deloitte & Touche,* 821 F.Supp. 152, 160 (S.D.N.Y.1993). This concept is undoubtedly based on the efficient market theory whereby all announcements of financial results and other developments are quickly incorporated into the ever-changing market price of the company's stock. *See Basic Inc. v. Levinson,* 485 U.S. 224, 241, 244, 108 S.Ct. 978, 988, 990, 99 L.Ed.2d 194 (1988). Thus, reliance on historical financial statements may indeed be an unreasonable business decision.

E & Y's Review Report addressing the interim financials for the First Quarter was included in the initial public filing of the Prospectus on October 23, 1986, but subsequent financial statements dealing with the Second and Third Quarters were released on December 18, 1986 and March 16, 1987 respectively. Therefore, E & Y argues that no investor could possibly have relied on E & Y's review report after it was superseded by later information on December 18, 1986, or at the very latest, by March 16, 1987. E & Y contends that the market price reflects financial reports instantaneously, and therefore the market cannot be held to have reasonably relied on outdated reports. Consequently, E & Y requests summary adjudication against at least the class plaintiffs who purchased their stocks after either December 12, 1986 or March 16, 1987.

Plaintiffs counter this argument by noting that the market price of stock is affected not only by each quarterly report, but also by financial statements which reflect the historical performance of the company over time. Plaintiffs have submitted declarations from expert witnesses who would testify at trial that the financial information in the Review Report covering the First Quarter financials would continue to be used in the analysis of earnings trends when subsequent financial statements and information were released during the Class Period. Declaration of Mark S. Kangas at ¶ 10. Plaintiffs have clearly raised a disputed issue of fact as to whether the subsequent financial statements, i.e., the Second and Third Quarter financial reports, superseded the Review Report and thereby precluded reasonable reliance.

Plaintiffs further point out that courts have held that a prior materially misleading statement continues to affect the market price of publicly traded securities until there is a corrective disclosure of sufficient force and effect to counter the false impression created by the prior misstatement. *See, e.g., In Re Apple Compute Secs. Litig.,* 886 F.2d 1109, 1114–16 (9th Cir.1989), *cert denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990); *Blackie v. Barrack,* 524 F.2d 891, 903–04 (9th

Cir.1975), *cert denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Thus, throughout the class period, E & Y had a continuing duty to withdraw its Review Report or bring the misstatements or omissions in that Report to the attention of the directors, the appropriate regulatory agencies, or investors. Its failure to do so raises a genuine issue of fact as to whether it is subject to Section 10(b)/Rule 10b–5 liability to the entire class because the Report may have continued to artificially inflate the market value of Z Best securities. *See e.g., Rudolph v. Arthur Anderson & Co.,* 800 F.2d 1040, 1044 (11th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987) ("standing idly by while knowing that one's good name is being used to perpetrate a fraud is inherently misleading"); *In re Rospatch Secs. Litig.,* 760 F.Supp. 1239, 1251 (W.D.Mich.1991) (holding that accountants "have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying" (citation omitted)).

Plaintiffs argue that the Review Report was effectively republished throughout the class period because, *inter alia,* (i) Z Best issued supplements and amendments to the Prospectus and Registration Statement which kept those documents alive in the marketplace; (ii) the first quarter results were incorporated in subsequent quarterly financial reports issued with E & Y's approval; and (iii) the Review Report was the most current statement by an independent public accountant and the Review Report carried with it E & Y's reputation as a Big Eight firm. *See* Kangas Declaration, ¶ 5–14.

Because Plaintiffs have raised disputed issues of fact as to whether subsequent financial information included misleading statements made in the Review Report, and whether E & Y had an ongoing duty to correct the alleged misrepresentations in the Review Report and any subsequent statement incorporating its findings in the Review Report, this Court hereby **DENIES** E & Y's additional ground for summary adjudication.

### III. CONCLUSION

Defendant E & Y's motion for summary adjudication is hereby **GRANTED** only as to the issue of the elimination of Plaintiffs' aider and abetter claims in Count III. All other grounds for summary adjudication are hereby **DENIED.**

**IT IS SO ORDERED.**